UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| GLOBAL QUALITY FOODS, INC., <br><br> Plaintiff, <br><br> v. <br><br> VAN HOEKELEN GREENHOUSES, INC., <br><br> Defendant. | Case No. 16-cv-00920-LB <br><br> **ORDER DISMISSING THIRD-PARTY COMPLAINT** <br><br> [ECF No. 26] |

### INTRODUCTION

This is a motion to dismiss for improper venue under Federal Rule 12(b)(3). (ECF No. 26.)[1] Third-party defendant Total Quality Logistics, Inc. ("TQL") moves to dismiss the impleader complaint against it under a contractual forum-selection clause. The contract in question is between TQL and third-party plaintiff van Hoekelen Greenhouses, Inc. The contract's forum-selection clause mandates that "exclusive jurisdiction and venue" for "any lawsuit . . . arising out of" the TQL–van Hoekelen contract lie in Ohio state court. (ECF No. 26-1 at 7-8.) All the parties to this lawsuit have consented to magistrate jurisdiction. (ECF Nos. 7, 16, 35.) The court held a hearing on this motion on August 11, 2016. The court will treat TQL's Rule 12(b)(3) motion as being made under the doctrine of *forum non conveniens*. For the reasons given below, the court

---

[1] Record citations refer to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of documents.

ORDER (No.16-cv-00920-LB)

grants TQL's motion, enforces the forum-selection clause, and dismisses the third-party complaint without prejudice.

**STATEMENT**

**1. The Principal Complaint and Underlying Dispute**

This dispute arises from goods that were allegedly damaged in shipping. According to its complaint, Plaintiff Global Quality Foods hired TQL to ship roughly 25,000 pounds of swordfish from Hayward, California to Boston, Massachusetts.[2] Acting as a broker, TQL then contracted with van Hoekelen to ship the goods.[3] Van Hoekelen picked up the swordfish from Global Quality and delivered it by truck to Boston; but, according to Global Quality, the cargo was three days late and "severely damaged."[4] More specifically, Global Quality complains that the swordfish was "frozen" and had "brown tails."[5] The original buyer rejected the shipment. Global Quality found a substitute buyer who accepted most of the cargo at a reduced price.[6] Global Quality then filed this lawsuit against van Hoekelen for strict liability under the Carmack Amendment to the Interstate Commerce Act (49 U.S.C. § 14706).[7]

**2. The Third-Party Complaint and the Brokerage Contract**

By a Rule 14 impleader complaint, van Hoekelen claims in turn that TQL should indemnify it for, or at least contribute to paying, whatever of Global Quality's losses it may be responsible for.[8] As third-party plaintiff, van Hoekelen sues TQL for "equitable indemnity and contribution," "apportionment," and "a declaration of the rights and duties of TQL and van Hoekelen."[9]

---

[2] ECF No. 1 at 2-3 (¶ 6).
[3] *See* ECF No. 17 at 3 (¶ 9); ECF No. 26-1 at 1-2 (¶¶ 2-7) (declaration), 4-11 (brokerage contract).
[4] ECF No. 1 at 3 (¶¶ 11, 13).
[5] *Id.* at 3 (¶ 14).
[6] *Id.* at 3 (¶¶ 12, 15).
[7] ECF No. 1 at 4 (¶¶ 20-22).
[8] ECF No. 17.
[9] *Id.* at 3-5.

United States District Court
Northern District of California

Global Quality did not name TQL as a defendant.[10] TQL is in this case only as third-party defendant to van Hoekelen's impleader complaint.

Several aspects of the TQL–van Hoekelen brokerage contract are relevant to this venue analysis. First, and most significant for present purposes, that contract has the following "Governing Law" term:

> Unless expressly preempted or controlled by Federal transportation laws and regulations, this Agreement shall be governed by and construed in accordance with the laws of the state of Ohio. CARRIER [*i.e.,* van Hoekelen] and BROKER [*i.e.,* TQL] further agree that the exclusive jurisdiction and venue for any lawsuit necessary to resolve a dispute arising out of this Agreement shall be in state court in Clermont County, Ohio. . . .[11]

Second, the contract states that van Hoekelen "is responsible for any damage or loss to the product."[12] Third, the contract has a number of provisions discussing the cargo's shipping temperature. That contract expressly incorporates a "Load / Rate Confirmation Sheet," which, among other things, described the temperature at which van Hoekelen would maintain the freight.[13] The contract also provides:

> Prior to loading, [van Hoekelen] shall confirm that the reefer [refrigeration?] unit is working properly and pre-cool trailer to temperature specified on [TQL's] rate confirmation sheet. . . . [Van Hoekelen] must strictly adhere to the temperature listed . . . .
>
> . . . .
>
> [Van Hoekelen] shall continuously maintain the temperature noted on [TQL's] Rate Confirmation while transporting freight. . . . [Van Hoekelen] shall contact [TQL] immediately in the event of any problems including, but not limited to, out-of-temperature condition, equipment malfunction, accident, or delay.[14]

Invoking the contract's forum-selection clause, TQL now moves to dismiss van Hoekelen's third-party complaint against it in favor of the contractually agreed-upon Ohio venue.[15]

---

[10] *See* ECF No. 1.

[11] ECF No. 26-1 at 7-8.

[12] *Id.* at 9 (¶ 22.4).

[13] *Id.* at 5, 9-10 (¶¶ 4, 23).

[14] *Id.* at 9-10 (¶ 23).

[15] ECF No. 26.

**GOVERNING LAW**

**1. Forum-Selection Clauses**

The party opposing a forum-selection clause has a hard task before it. "Because forum selection clauses are presumptively valid, they should be honored 'absent some compelling and countervailing reason.'" *Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1140 (9th Cir. 2004) (quoting *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 12 (1972)). "The Ninth Circuit has identified three 'compelling' reasons that would permit a court to disregard a forum selection clause . . . ." *Premiere Radio Networks, Inc. v. Hillshire Brands Co.*, 2013 WL 5944051, *2 (C.D. Cal. Nov. 4, 2013) (citing *Murphy*, 362 F.3d at 1140). These reasons are:

> (1) its incorporation into the contract was the result of fraud, undue influence, or overweening bargaining power; (2) the selected forum is so inconvenient that the complaining party will be practically deprived of its day in court; or (3) enforcement of the clause would contravene a strong public policy of the forum in which the suit is brought.

*Bridgemans Svcs. Ltd. v. George Hancock, Inc.*, 2015 WL 4704567, *2 (W.D. Wash. Aug. 7, 2015) (citing *Murphy*, 362 at 1140 and *Argueta v. Banco Mexicano, S.A.*, 87 F.3d 320, 325 (9th Cir. 1996)); *accord, e.g.*, *Richards v. Lloyd's of London*, 135 F.3d 1289, 1294 (9th Cir. 1998). These departures from presumed validity are "construed narrowly." *Argueta*, 87 F.3d at 325. "Public policy," moreover, "strongly favors the enforcement of forum selection clauses." *Koken v. Stateco Inc.*, 2006 WL 2918050, *8 (N.D. Cal. Oct. 11, 2006) (citing *Argueta*, 87 F.3d at 325); *accord, e.g., E&J Gallo Winery v. Andina Licores S.A.*, 440 F. Supp. 2d 1115, 1126 (E.D. Cal. 2006) ("[B]oth Supreme Court and Ninth Circuit cases clearly establish that strong public policy supports the enforcement of forum selection clauses.") (citing cases). "The party challenging the clause [thus] bears a 'heavy burden of proof" and must "clearly show that enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or over-reaching." *Murphy*, 362 F.3d at 1140 (quoting *Bremen*, 407 U.S. at 15); *accord, e.g., Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509, 514 (9th Cir. 1988) ("Forum selection clauses are *prima facie* valid, and are enforceable absent a strong showing by the party opposing the clause . . . .").

## 2. *Forum Non Conveniens*

"[T]he appropriate way to enforce a forum-selection clause pointing to a state or foreign forum is through the doctrine of *forum non conveniens*." *Atl. Marine Constr. Co. v. United States Dist. Ct. for the W. Dist. of Tex.*, 134 S. Ct. 568, 580 (2014).[16] When a party moves to enforce such a clause, "a district court should transfer the case unless extraordinary circumstances unrelated to the convenience of the parties clearly disfavor a transfer." *Id.* at 575, 581.

Normally, *forum non conveniens* analysis requires the court to evaluate the parties' "private interests," along with "public-interest considerations," and to decide whether, "on balance," sending the case to a new venue would serve "the convenience of parties and witnesses" and otherwise promote "the interest of justice." *Id.* at 579, 581 (citing § 1404(a)). "The calculus changes, however," when transfer is sought under a "valid forum-selection clause." *Atlantic Marine*, 134 S. Ct. at 581. In such a case, the court "should not consider arguments about the parties' private interests." *Id.* at 582. "When parties agree to a forum-selection clause," the Supreme Court has held,

> they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation. A court accordingly must deem the private-interest factors to weigh entirely in favor of the preselected forum.

*Id.* "As a consequence, a district court may consider arguments about public-interest factors only." *Id.* "The Ninth Circuit provides five public interest guideposts by which to evaluate a *forum non conveniens* dismissal:

---

[16] When a forum-selection clause points to another federal court, the device for enforcing that clause is 28 U.S.C. § 1404(a). *Atlantic Marine*, 134 S. Ct. at 579. "Section 1404(a) is merely a codification of the doctrine of *forum non conveniens* for the subset of cases in which the transferee forum is within the federal court system . . . ." *Id.* at 580. The analyses under § 1404(a) and *forum non conveniens* are substantively identical. *See id.* ("Section 1404(a) 'did not change "the relevant factors" which federal courts used to consider under the doctrine of *forum non conveniens* . . . .'") (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 37 (1988) (in dissent)). Consequently, "courts should evaluate a forum-selection clause pointing to a nonfederal forum [under the *forum non conveniens* doctrine] in the same way that they evaluate a forum-selection clause pointing to a federal forum [under § 1404(a)]." *Atlantic Marine*, 134 S. Ct. at 580. This *forum non conveniens* discussion thus draws upon § 1404(a) precedent, especially *Atlantic Marine*, without further distinguishing between the two embodiments of this venue doctrine.

ORDER (No.16-cv-00920-LB)  5

>   (1) local interest in the lawsuit; (2) the court's familiarity with the governing law; (3) the burden on local courts and juries; (4) congestion in the court; and (5) the costs of resolving a dispute unrelated to a particular forum.

*Bridgemans*, 2015 WL 4704567 at *4 (citing *Boston Telecomms. Grp. v. Wood,* 588 F.3d 1201, 1211 (9th Cir. 2009)).[17]

"The party challenging a valid forum selection clause must show that the public interest factors 'overwhelmingly disfavor' enforcement . . . ." *Bridgemans*, 2015 WL 4704567 at *4 (quoting *Atlantic Marine*, 134 S. Ct. at 583). "Because [these] factors will rarely defeat a transfer motion, the practical result is that forum-selection clauses should control except in unusual cases." *Atlantic Marine*, 134 S. Ct. at 582; *see Stewart Organization*, 487 U.S. at 30-31 (cases overruling a forum-selection clause "will not be common"). Forum-selection clauses are indeed to be "given controlling weight in all but the most exceptional cases." *Bridgemans*, 2015 WL 4704567 at *4 (quoting *Atlantic Marine*, 134 S. Ct. at 579) (quoting in turn *Stewart Organization*, 487 U.S. at 33).

### 3. Converting the Rule 12(b)(3) Motion

TQL has not moved under the doctrine of *forum non conveniens*. It has moved to dismiss this case for "improper venue" under Rule 12(b)(3). This was the proper way to enforce a forum-selection clause in the Ninth Circuit before the Supreme Court's 2014 decision in *Atlantic Marine*. *See, e.g., Vogt-Nem, Inc. v. M/V Tramper*, 263 F. Supp. 2d 1226, 1229-30 (N.D. Cal. 2002). The court will nevertheless address TQL's motion under the *forum non conveniens* doctrine.

This approach is proper. The object of TQL's motion is plainly to enforce the parties' forum-selection clause. By wrongly couching its motion under Rule 12(b)(3), TQL has not importantly misled the analysis. Van Hoekelen briefed the *forum non conveniens* issue (ECF No. 28 at 13-15), as did TQL in its reply (ECF No. 31 at 7-8). Days before the hearing on TQL's motion, the court

---

[17] The Supreme Court has identified essentially the same set of public interests. *See Atlantic Marine*, 134 S. Ct. at 581 n.6 ("Public-interest factors may include the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law.") (quotation omitted).

ORDER (No.16-cv-00920-LB)                6

instructed the parties that they should be prepared to discuss the public-interest considerations of the *forum non conveniens* analysis. (ECF No. 33.) If anyone is disadvantaged by TQL's couching its motion under Rule 12(b)(3), moreover, it is TQL itself, who lost an opportunity to address *forum non conveniens* in its initial motion. Yet TQL urges the court to proceed with the *forum non conveniens* analysis. (*See* ECF No. 31 at 2 and n. 1.) The parties have given the court enough material to fully conduct that analysis. "Although [TQL] did not explicitly raise *forum non conveniens* in its motion to dismiss, the doctrine of *forum non conveniens* lies within the court's inherent authority." *Bridgemans*, 2015 WL 4704567 at *4 (citing *Chambers v. NASCO,* 501 U.S. 32, 44 (1991)). "The district court may [even] raise *forum non conveniens* of its own accord." *Bridgemans*, 2015 WL 4704567 at *4 (citing cases); *see Costlow v. Weeks*, 790 F.2d 1486, 1487-88 (9th Cir. 1986) (affirming *sua sponte* dismissal for improper venue and citing "long-approved practice" of *sua sponte* transfers under *forum non conveniens*). The court thus chooses to treat TQL's motion as one under the doctrine of *forum non conveniens*. *See also LeBlanc v. C.R. England, Inc.,* 961 F. Supp. 2d 819, 827 (N.D. Tex. 2013) (applying Fifth Circuit law) ("[T]he moving party's choice of procedural mechanisms — Rule 12(b)(3) or § 1404(a) — does not dictate the court's choice of analytical tools.") (citing 5B Wright & Miller, *Federal Practice & Procedure* § 1352, p. 131 (3d ed. Supp. 2013)).

## ANALYSIS

### 1. Forum-Selection Clauses Apply to Rule 14 Third-Party Complaints

Van Hoekelen argues that a third-party complaint "is not subject to venue objections." (ECF No. 28 at 7-11.) It reasons that Rule 14 "impleader claims do not have to meet federal venue requirements." (*Id.* at 7-8) (citing authorities). Van Hoekelen thus specifically concludes that Rule 14 trumps forum-selection clauses. Forum-selection clauses, on this view, cannot be invoked to dismiss or transfer third-party complaints. (*Id.* at 7-11.) Van Hoekelen correctly writes (*id.* at 9-10) that this was the conclusion reached in *Am. Licorice Co. v. Total Sweeteners, Inc.*, 2014 WL 892409 (N.D. Cal. Mar. 4, 2014), and urges this court to follow *American Licorice*.

This position has merit. In *American Licorice*, the court refused to enforce a forum-selection clause, under § 1404, and so declined to transfer a third-party complaint to New York. *American Licorice*, 2014 WL 892409 at *6-7. The *American Licorice* court held that, "Rule 14 overrides venue considerations." *Id.* at *6. Pointing to Rule 14's concern for "judicial efficiency," and invoking precedential support for (what van Hoekelen calls) "ancillary venue," *American Licorice* decided that Rule 14 impleader complaints take "priority" over forum-selection clauses. *Id.* at *6-7. Because this court will ultimately disagree with *American Licorice*, it is worth quoting that case's core reasoning at some length:

> The parties do not cite, nor could the Court find, legal authority that decides the priority between a forum selection clause and a Rule 14 impleader claim. However, carving out this third[-]party action and transferring it to New York makes little sense. [The third-party plaintiff's] potential liability will likely depend integrally on the other two actions before this Court. Transfer would be antithetical to the policy of judicial efficiency underlying Rule 14.
>
> This conclusion is consistent with the exemption of third-party actions from the statutory venue provisions (28 U.S.C. § 1391) and the Court's ancillary jurisdiction over related third-party actions, all of which indicate Rule 14 takes precedence. *See United States v. United Pacific Ins. Co.,* 472 F.2d 792, 794 (9th Cir. 1973) (holding "regardless of the absence of diversity of citizenship or of a federal question in the ancillary suit," a court has ancillary jurisdiction over "third-party claims . . . if the claims arise out of the subject matter of the original action and involve the same persons and issues, or if they arose out of the same 'transaction or occurrence'" (citations omitted)); *United States v. Acord,* 209 F.2d 709, 714 (10th Cir. 1954) ("the reasons which give the court jurisdiction over an ancillary proceeding by virtue of its jurisdiction over the principal action, likewise support the conclusion that venue in the ancillary proceeding may depend or rest upon the venue in the main proceeding"). Thus, even if the forum selection clause required the third-party action to be heard in New York if it had been brought as an independent action, it has little effect on [third-party plaintiff] Total Sweeteners' Rule 14 claim.
>
> The public interest factors [under § 1404] would outweigh the private interest factors, since maintaining the action here would "prevent the relitigation in other courts of the issues heard and adjudged in the original suit" and "promote the economical and expeditious administration of justice by avoiding a multiplicity of suits through permitting issues and claims arising out of the same operative facts to be embraced in a single action." [*United Pacific*], 472 F.2d at 794. Note that, unlike in *Atlantic Marine,* the private interest factors are not deemed to weigh in favor of the "selected" forum, because this is not a case where "a party bound by a forum selection clause flouts its contractual obligation and files suit in a different forum." *Atlantic Marine,* 134 S. Ct. at 582. . . .

ORDER (No.16-cv-00920-LB)        8

>     Thus, the Court denies [the] request to transfer the third-party action based on the purported forum selection clause.

(*Id.*)

This court must respectfully disagree with the decision in *American Licorice*. That decision is well reasoned and understandable. But it is one decision. (As *American Licorice* itself realized. *See id.* at *6 (noting lack of authority treating question as one of priority between Rule 14 and forum-selection clauses).) Were it the only case applying forum-selection clauses to impleader complaints, this court might follow *American Licorice*. Other cases, however, including cases in this district, have applied forum-selection clauses to dismiss third-party complaints.[18] With respect to *American Licorice's* driving concern, "judicial efficiency," this court agrees with *Premiere Radio, supra*: "[C]onsiderations of judicial economy alone do not permit this Court to ignore a 'presumptively valid' forum selection clause." *Premiere Radio*, 2013 WL 5944051 at *3 (citing *Murphy,* 362 F.3d at 1140). The Ninth Circuit has not made the last point overtly (at least not in a case that this court has seen), but it is implicit in the analyses that the Supreme Court and our governing appeals court have set out in this area. First, "[p]ublic policy strongly favors the enforcement of forum selection clauses." *Koken* at 8 (citing *Argueta,* 87 F.3d at 325); *accord, e.g., E&J Gallo,* 440 F. Supp. 2d at 1126. That "judicial efficiency" alone cannot defeat a valid forum-selection clause — at least not invariably — is implied in the several public-interest concerns that, when "overwhelming[]," can defeat a forum-selection clause under the rules of *forum non conveniens*. *See, e.g., Murphy,* 362 F.3d at 1140 (grounds to "disregard" clause); *Bridgemans*, 2015 WL 4704567 at *4 (public-interest considerations). Viewed in the light of governing precedent, *American Licorice* implies either that all Rule 14 cases, *as such*, raise "public policy"

---

[18] *See Bridgemans*, 2015 WL 4724567 at *4-*6 (analyzing under *Atlantic Marine*) (enforcing forum-selection clause to dismiss third-party complaint); *Premiere Radio*; 2013 WL 5944051 at *2-*4 (same) (rejecting, *inter alia*, argument that dismissing third-party complaint would "multiply litigation"); *Hile v. Buth-Na-Bodhaige, Inc.*, 2007 WL 4410774, *1-*3 (N.D. Cal. 2007) (enforcing forum-selection clause to dismiss third-party complaint); *Koken*, 2006 WL 2918050 at *5-*9 (same); *Am. Home Ass. Co. v. TGL Container Lines, Ltd.*, 347 F. Supp. 2d 749, 755-60, 764 (N.D. Cal. 2004) (same) (Rule 14 complaint between shipper and broker concerning damaged goods); *Vogt-Nem*, 263 F. Supp. 2d at 1230-34 (same) (impleader claim involving shipper, broker, damaged goods). Following van Hoekelen's proposed distinction, which it pressed at the hearing, the court reviewed the point closely, but does not think that this forum-selection analysis is changed, or interestingly affected, by the fact that some of these cases lie in admiralty.

concerns so "strong" that the court can always "disregard" a valid forum-selection clause, *see Murphy,* 362 F.3d at 1140, or that, by threatening the "relitigation" of claims in "multipl[e]" lawsuits, Rule 14 cases always "overwhelmingly disfavor[]" enforcing such clauses, *see Bridgemans*, 2015 WL 4704567 at *4. This *per se* position seems out of step with existing guidance in this area. Neither the basic enforcement test described in *Murphy*, nor the public-interest considerations laid out in *Atlantic Marine*, point to the absolute primacy of concerns that be cabined under "judicial efficiency." Finally, the *American Licorice* rule seems at odds with the Supreme Court's instruction that, "[i]n all but the most unusual cases . . . , 'the interest of justice' is served by holding parties to their bargain." *Atlantic Marine*, 134 S. Ct. at 583.

If, against all this, Rule 14 indeed sets up a *per se* defense to forum-selection clauses, then that is something for the Supreme Court or the Ninth Circuit to say. This court's best judgment is that forum-selection clauses do apply to Rule 14 third-party claims. If such a clause is enforceable, under the governing tests, then a third-party complaint should be dismissed or transferred according to the parties' agreement.

### 2. The Third-Party Complaint Is Within the Forum-Selection Clause's Scope

Van Hoekelen argues that its third-party claims fall outside the scope of the forum-selection clause. (ECF No. 28 at 11-12.) Specifically, van Hoekelen writes:

> [V]an Hoekelen's claims against TQL are not contract based. [V]an Hoekelen's claims are limited to *equitable* indemnity, contribution, apportionment and declaratory relief from TQL for Plaintiff's alleged damages within the underlying claim. . . . Nowhere within the Third Party Complaint does van Hoekelen allege that TQL is liable because it failed to fulfill its obligations under the BCA. To the contrary, van Hoekelen[] . . . alleges that TQL is responsible for Plaintiff's damages because it failed to fulfill its duties to Plaintiff by providing inaccurate information regarding the cargo.

(*Id.*) (record citations omitted) (emphasis in original).

This is unpersuasive. The parties' forum-selection clause covers "*any lawsuit* necessary to resolve a dispute *arising out of* this Agreement." (ECF No. 26-1 at 7-8 [¶ 15]) (emphasis added). These are broad terms. "[F]orum selection clauses governing disputes 'arising out of or relating to' the contract cover claims that have a *significant relationship* to the contract or have 'their *origin or*

*genesis' in the contract." Cedars-Sinai Med. Ctr. v. Glob. Excel Mgmt., Inc.*, 2009 WL 7322253, *5 (C.D. Cal. Dec. 30, 2009) (quoting *Seagal v. Vorderwuhlbecke*, 162 F. App'x 746, 747-48 (9th Cir. 2006) (forum-selection clause) and *Simula, Inc., v. Autoliv, Inc.,* 175 F.3d 716, 721 (9th Cir. 1999) (arbitration clause)) (emphases added).[19]

It is beyond serious dispute that van Hoekelen's claims — which, at bottom, are all for indemnification (*see* ECF No. 17 at 3-5) — "have a significant relationship to," and find their "origin and genesis" in the van Hoekelen–TQL brokerage contract. These parties find themselves in the relationship they do only because of that contract. Van Hoekelen transported goods for Global Quality only through that contract. As TQL writes, and as its evidence confirms: "[TQL's] relationship with van Hoekelen was governed entirely by [the parties'] contract; without a Broker-Carrier agreement in place [TQL] would not have tendered any freight to van Hoekelen." (ECF No. 31 at 4); *see* (Bostwick Decl. – ECF No. 26-1 at 1-2 [¶¶ 2-5, 7.) Furthermore, the "duties" that TQL allegedly breached "by providing inaccurate information regarding the cargo" — these duties undeniably "arose out of" and have a "significant relationship" to the brokerage contract. For instance, in its claim for "equitable indemnity and contribution," van Hoekelen alleges that it "followed TQL's directions regarding the delivery of the cargo, including . . . the cargo delivery deadline and the requisite temperature for the cargo." (ECF No. 17 at 3 [¶ 11].) This key fact — the shipping temperature — is enmeshed in the brokerage contract. That contract expressly incorporates a "Load / Rate Confirmation Sheet," which, among other things, described the temperature at which van Hoekelen was to maintain the freight. (ECF No. 26-1 at 5, 9-10 [¶¶ 4, 23].)[20]

Van Hoekelen's claims do not fall outside the forum-selection clause simply because they sound in equity. That clause embraces "*any* lawsuit" arising out of the brokerage contract. (ECF

---

[19] "[B]ecause enforcement of a forum clause necessarily entails interpretation of the clause before it can be enforced, . . . federal law applies to interpretation of forum selection clauses." *Hile*, 2007 WL 4410774 at *1 (quoting *Bremen,* 407 U.S. at 15).

[20] The brokerage contract has several express indemnity terms but all contemplate van Hoekelen, the carrier, indemnifying TQL, the broker. This includes the most relevant indemnification clause, which covers "delay" in shipping or "damage to property." [ECF No. 26-1 at 7 (¶ 10).])

ORDER (No.16-cv-00920-LB)   11

No. 26-1 at 7-8) [¶ 15] (emphasis added). The clause does not exempt equitable suits or claims. (*Id.*) Even if it did, it is not clear that van Hoekelen could elude the clause by casting its indemnification claims in equity. In *Premiere Radio*, *supra*, the court considered the scope of a forum-selection clause whose initial language mirrored that of the term involved here ("any legal action . . . in any way arising out of this Agreement"), but which specifically exempted "claims for equitable relief." *Premiere Radio*, 2013 WL 5944051 at *2. The third-party plaintiff argued that its declaratory-relief claim was exempt from the forum-selection clause "because declaratory relief sounds in equity." *Id.* The *Premiere Radio* court disagreed, writing:

> [Third-party plaintiff] Hillshire's claim for declaratory relief seeks "a judicial determination of its rights under the Agreement." In other words, Hillshire is asking this Court to determine that the Agreement holds [third-party defendant and movant under the forum-selection clause] Images USA responsible for paying [the underlying plaintiff] Premiere. ***Because Hillshire's claim for declaratory relief replicates its claims for indemnification*** and breach of contract, the Court finds that the declaratory relief claim does not fall within the forum selection clause's exception for equitable relief. If it did, both Images USA or Hillshire ***could always evade the forum selection clause by styling their contractual claims as claims for declaratory relief***.

*Id.* (emphases added). Similar logic applies here. Indeed, *Premiere Radio's* reasoning applies more strongly here, where the forum-selection clause does not exempt equitable claims. Van Hoekelen has given no cogent reason, nor pointed to any authority, that convinces the court that equitable claims somehow fall outside the description, "any lawsuit . . . to resolve a dispute arising out of" the parties' contract. (*See* ECF No. 28 at 11-12.) Though cast in equity, van Hoekelen's claims seek compensation for acts rooted in the brokerage contract. Whatever their technical garb, those claims "arise out of" that contract.

3. **Enforcing the Clause Is Not "Unreasonable or Unjust"**

Invoking the basic enforceability test described in *Bridgemans*, *supra*, van Hoekelen argues that enforcing the forum-selection clause would be "unreasonable or unjust." (ECF No. 28 at 12-13.) Again, a court may "disregard" a forum-selection clause on this basis only where one of the following three things is true: The clause was "the result of fraud, undue influence, or

overweening bargaining power"; "the selected forum is so inconvenient that the complaining party will be practically deprived of its day in court"; or enforcing the clause "would contravene a strong public policy" of the current forum. *Bridgemans*, 2015 WL 4704567 at *2 (citing *Murphy*, 362 F.3d at 1140 and *Argueta*, 87 F.3d at 325). The party opposing a forum-selection clause as "unreasonable or unjust" has a "heavy burden" and must "clearly show" that one of these "narrow[]" exceptions applies. *E.g., Murphy*, 362 F.3d at 1140 (quoting *Bremen*, 407 U.S. at 15). Van Hoekelen has not made this showing.

Van Hoekelen does not make an argument under the first or third items above. It does not argue that the clause is the product of fraud, undue influence, or overweening bargaining power[21]; nor does it contend that enforcing the clause would violate a strong public policy of this forum.

Van Hoekelen's argument in this area is couched under the second head — though some of its arguments do not fit neatly there. After listing several problems that it sees in enforcing the forum-selection clause — and mostly using conclusory statements — van Hoekelen insists that applying the forum-selection clause to dismiss its third-party complaint would "effectively" deprive it of its day in court. (ECF No. 28 at 12.)

The court is not convinced. For example, that van Hoekelen "did not initiate or choose the forum for" this lawsuit does not obviously affect the question whether one aspect of this suit, its third-party complaint, should be sent to the forum that TQL and van Hoekelen contractually agreed to.[22] Nor does the court agree that "without TQL in this litigation, the claims cannot be fully litigated." (*See* ECF No. 28 at 12.) The claims between Global Quality and van Hoekelen do

---

[21] At the hearing, van Hoekelen for the first time called the brokerage agreement an adhesion contract. But van Hoekelen has not elaborated an argument along these lines, and has submitted no evidence upon which the court could ground the needed analysis.

[22] That van Hoekelen did not choose this forum does mean that it cannot be accused of "flouting" its contractual commitment to an Ohio venue. That a plaintiff had "flouted" its contractual forum choice by filing elsewhere loomed large in *Atlantic Marine*. *See Atlantic Marine*, 134 S. Ct. at 581-83. Which may be what van Hoekelen has in mind. But this has no effect on the current analysis. *Atlantic Marine* involved a direct complaint between a first-level plaintiff and defendant; it did not involve a third-party complaint. More important to the present point, *Atlantic Marine* discussed the effect of a plaintiff's disregarding its chosen forum on aspects of the *forum non conveniens* analysis — not on the prior question of whether a forum-selection clause was enforceable in the first place. *See id.* Van Hoekelen is here conflating two different inquiries. That it "did not choose" to file outside Ohio plays no obvious role in the initial enforceability analysis under *Murphy*, *Bremen*, and their ilk.

not require TQL to be in this lawsuit as a third-party defendant. And the question before the court now is exactly whether van Hoekelen's *impleader claims against TQL* should remain in this case. If they are sent to Ohio, they can be "fully litigated" there. Furthermore, if this case concludes that van Hoekelen is *not* liable to Global Quality, then the pendent dispute between van Hoekelen and TQL will, in a sense, have been "fully litigated" — in van Hoekelen's favor. Sending the third-party claims to Ohio does not threaten van Hoekelen with "conflicting judgments." At least not necessarily, and not in a way that cannot be solved by applying the rules of issue preclusion or, short of that, through the intelligent use of stipulations and other procedural devices. Van Hoekelen declares that "fairness and judicial efficiency and economy will not be served by litigating this case in two different jurisdictions." (*Id.*) But these statements are wholly conclusory. At any rate, they do not identify problems so onerous that they make enforcing the forum-selection clause "clearly . . . unreasonable."

The court does not agree that holding van Hoekelen to its contractually agreed choice of forum, thus directing the third-party claims to the state courts of Ohio, would in any measure "deprive[] [van Hoekelen] of its day in court." Van Hoekelen has not "clearly show[n]" that enforcing the forum-selection clause would be "unreasonable" or "unjust." *See Murphy*, 362 F.3d at 1140 (quoting *Bremen*, 407 U.S. at 15).

### 4. *Forum Non Conveniens*

This brings us to the *forum non conveniens* analysis itself. This inquiry weighs the public-interest factors that the Supreme Court and the Ninth Circuit have identified. *See, e.g., Bridgemans*, 2015 WL 4704567 at *4; *Atlantic Marine*, 134 S. Ct. at 581-84. To block a *forum non conveniens* dismissal, van Hoekelen must show that these factors "overwhelmingly disfavor" enforcing the forum-selection clause. *Bridgemans*, 2015 WL 4704567 at *4 (quoting *Atlantic Marine*, 134 S. Ct. at 583). Public interests will "rarely defeat" a motion to enforce a forum-selection clause, however, so that the latter must be "given controlling weight in all but the most exceptional cases." *Bridgemans*, 2015 WL 4704567 at *4 ("rarely defeat"); *Atlantic Marine*, 134 S. Ct. at 579, 583 ("exceptional"); *Stewart Organization*, 487 U.S. at 33 (same).

**4.1 Local Interest in the Lawsuit**

This factor ultimately weighs in favor of enforcing the forum-selection clause. Van Hoekelen argues that a "substantial part of the alleged events" in this case occurred in California. (ECF No. 28 at 13.) That may be so, at least with respect to the underlying, principal dispute. What is precisely in question, however, is not the underlying complaint, but the indemnification dispute between van Hoekelen and TQL. According to the latter parties' agreement, that dispute is to be tried in Ohio courts under Ohio law. (ECF No. 26-1 at 7.) Van Hoekelen alleges that TQL is incorporated and has its principal place of business is in Ohio. (ECF No. 17 at 3 [¶¶ 8-9].) TQL does appear to have a physical address in Ohio. (*See* ECF No. 26-1 at 4.) Ohio has an interest in "protecting the bargained-for rights and expectations of its residents," *see Bridgemans*, 2015 WL 4724567 at *5, and thus in seeing this forum-selection clause enforced, rather than being ignored and nullified without good reason. Whatever California's interest in the underlying suit, and whatever more attenuated interest it has in the pendent contribution dispute, this court thinks that that interest is outweighed by Ohio's interest in seeing the parties' valid forum-selection clause enforced.

**4.2 Familiarity With the Governing Law**

This factor too weighs in favor of enforcing the forum-selection clause. That clause places the dispute between van Hoekelen and TQL under Ohio law. (ECF No. 26-1 at 7.) "This court is certainly capable of applying [Ohio] law, but it has no particular 'familiarity' therewith." *See Bridgemans*, 2015 WL 4724567 at *5. The state courts of Ohio are surely better versed in their own law.

**4.3 Burden on Courts and Juries; Court Congestion**

The parties have not given the court any information concerning the relative congestion of this court and the "state court in Clermont County, Ohio," which is the venue that the forum-selection clause designates. (*See* ECF No. 26-1 at 7-8.) Insofar as this factor weighs the costs to the

respective judiciaries, then, the court deems this factor neutral. It tilts this analysis in no particular direction. To the extent that the "burden on courts and juries" factor intersects with the earlier concern about "local interest in the lawsuit," then the court again thinks that Ohio's interest outweighs this forum's, so that Ohio would be willing to shoulder the burden of ensuring that contracts made by its residents, invoking its laws, are honored.

**4.4 Costs of a Dispute Unrelated to the Forum**

The court thinks that this factor is neutral. It is true that California has some relation to the ancillary indemnification dispute between van Hoekelen and TQL. *See Bridgemans*, 2015 WL 4724567 at *5 (quoting *Boston Telecommunications*, 588 F.3d at 1212) ("We need not hold . . . that California is the principal locus of the case or that California has more of an interest than any other jurisdiction in order to conclude that California has a meaningful interest in this litigation. . . . [W]e ask only if there is an identifiable local interest in the controversy.") (quotations omitted). But, once again, Ohio shares an interest in, a relationship to, the indemnification dispute that is our immediate concern.

\* \* \*

Ultimately, these public-interest factors do not "overwhelmingly disfavor" enforcing the forum-selection clause. *See Atlantic Marine*, 134 S. Ct. at 583. This is not a "rare[]" and "most exceptional" case in which the court should ignore such a clause. *See id.* at 579, 582.

\*

**CONCLUSION**

The court sees no "compelling" reason not to enforce the parties' forum-selection clause. Nor does it find this a "most exceptional case" in which public-interest considerations "overwhelmingly disfavor" enforcing that clause. The court grants TQL's motion and, under the doctrine of *forum non conveniens*, dismisses van Hoekelen's third-party complaint without prejudice.

This disposes of ECF No. 26.

**IT IS SO ORDERED.**

Dated: August 12, 2016

_____
LAUREL BEELER
United States Magistrate Judge